## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ARMADILLO DISTRIBUTION
ENTERPRISES, INC.,**

      **Plaintiff,**

**v.**                                               **Case No: 8:12-cv-1839-T-36EAJ**

**HAI YUN MUSICAL INSTRUMENTS
MANUFACTURE CO. LTD.,**

      **Defendant.**

_____/

### O R D E R

      This matter comes before the Court upon the Plaintiff's Motion for Involuntary Dismissal of Defendant's Counterclaims (Doc. 84) and Plaintiff's Motion for Default Judgment (Doc. 85). Defendant, a foreign corporation, is currently unrepresented and has not responded to the motions. The Court, having considered the motions and being fully advised in the premises, will grant Plaintiff's Motion for Involuntary Dismissal of Defendant's Counterclaims (Doc. 84) and grant in part and deny in part Plaintiff's Motion for Default Judgment (Doc. 85).

### BACKGROUND

**I.**      **Procedural History**

      Invoking this Court's diversity jurisdiction, Plaintiff Armadillo Distribution Enterprises, Inc. ("Armadillo") filed the instant action alleging that Defendant Hai Yun Musical Instruments Manufacture Co. Ltd. ("Hai Yun") breached a manufacturing contract, an implied covenant of good faith and fair dealing, an express warranty, an implied warranty of merchantability, and an implied warranty of fitness for a particular purpose. *See* Doc. 1.  On October 22, 2013, the Clerk entered a default against Hai Yun for failure to timely respond to the complaint.  Doc. 17.  Hai

Yun then appeared through counsel and filed a motion to set aside the entry of default.  Docs. 18, 19.  On November 20, 2013, the motion to set aside the default was granted.  Doc. 21.

In its Amended Answer, filed on February 26, 2014, Hai Yun raised affirmative defenses of waiver, set-off, comity, collateral estoppel, and *res judicata*. Doc. 38. Hai Yun also asserted counterclaims for breach of contract (Count I) and domestication of an out-of-country foreign money judgment, pursuant to Fla. Stat. §§ 55.601, *et seq.* (Count II).  *Id.*  Hai Yun alleged, *inter alia*, that it had already obtained a judgment against Armadillo in a related breach-of-contract action filed in China, based on Armadillo's failure to pay Hai Yun amounts owed under purchase orders.  *Id.* ¶ 82.  Armadillo appeared by counsel and defended that proceeding, and the Chinese court ultimately ordered Armadillo to pay Hai Yun approximately $195,184 for the cost of the goods and $48,688 in damages.  *Id*. ¶¶ 83-86 & Exh. A.

In August 2014, Hai Yun's counsel moved to withdraw.  Docs. 58, 61, 63.  The magistrate judge granted the motion and ordered Hai Yun to obtain substitute counsel within 30 days because corporations cannot appear *pro se* in this Court.  *See* Docs. 64, 66; *Palazzo v. Gulf Oil Corp*., 764 F.2d 1381, 1385 (11th Cir. 1985); Local Rule 2.03(e).  The magistrate judge notified Hai Yun that failure to timely obtain substitute counsel could result in entry of default or other sanctions.  *See* Docs. 64, 66.  After Hai Yun failed to obtain counsel within the time allowed, the magistrate judge issued an Order to Show Cause as to why sanctions should not be imposed, including default.  Doc. 71. Hai Yun did not respond to that Order and a Clerk's default was entered on June 23, 2015.  Doc. 79.

The final pretrial conference in this matter was held on June 23, 2015. Doc. 80. Hai Yun did not appear and Armadillo represented that Hai Yun did not cooperate in the drafting of the pretrial statement. Armadillo was given one week to file a motion for default judgment and the

case was removed from the Court's July 2015 trial calendar, to be rescheduled if necessary. On June 30, 2015, Armadillo timely filed its Motion for Default Judgment (Doc. 85), as well as a Motion for Involuntary Dismissal of Counterclaims (Doc. 84) and a Motion to Withdraw Jury Demand (Doc. 86). Hai Yun has not responded to any of these motions and, to date, no attorney has appeared on its behalf.

## II.     Factual Allegations[1]

Armadillo is a major distributor of musical instruments, including, but not limited to, famous brands such as Dean® and ddrum®, to dealers throughout the United States and to international distributors throughout the world.  Doc. 1 ¶ 4.  Over the years, Armadillo has invested large amounts of time, effort, and money to develop the ddrum® brand's "Diablo" line of drum kits and the goodwill associated therewith. *Id.* ¶ 9.

Hai Yun is a Chinese corporation that manufactures musical instruments, including drums. *Id.* ¶ 5.  Armadillo and Hai Yun have had a long-standing business relationship over several years, whereby Armadillo would contract with Hai Yun for the manufacture of certain musical instruments to be delivered to Armadillo at its headquarters in Tampa, Florida, which were thereafter marketed and sold under Armadillo's ddrum® brand of musical instruments. *Id.* ¶ 11. Over the course of several years, Armadillo placed numerous orders with Hai Yun for drums. *Id.* ¶ 12. In each instance, Hai Yun would manufacture the drums to meet the specifications that Armadillo would provide and would deliver the drums to Armadillo at its headquarters. *Id.* In each

---

[1] The facts presented here are derived from the Complaint (Doc. 1) because "[a] court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment." *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

instance, the drums that Hai Yun delivered conformed to the specifications and were thereafter distributed by Armadillo as was contemplated by both Armadillo and Hai Yun. *Id.*

In the spring of 2010, Armadillo placed an order with Hai Yun for the manufacture of approximately one thousand Drum Kits, to serve as the 2011 line of the ddrum® brand's "Diablo" Drum Kits. *Id.* ¶ 13. Hai Yun accepted the order from Armadillo, and the parties agreed that Hai Yun would furnish samples for Armadillo's approval prior to manufacturing the Drum Kits, and would, upon receipt of approval, manufacture and deliver the Drum Kits to Armadillo at its headquarters in Tampa, Florida. *Id.* ¶ 14. Thereafter, prior to initiating the production run to manufacture the Drum Kits, Hai Yun built and shipped Drum Kit samples to Armadillo which were inspected and approved by Armadillo in terms of both design and quality of the drums. *Id.* ¶ 15.

After receiving Armadillo's approval of the sample Drum Kits, Hai Yun manufactured and delivered to Armadillo five shipping containers at its headquarters in Tampa, Florida, each one containing approximately two hundred Drum Kits. *Id.* ¶ 16. As per Armadillo's standard practice with products ordered from Hai Yun, and based upon the careful review of the samples previously provided to Armadillo by Hai Yun, upon receipt, Armadillo began distribution of the first container of Drum Kits to Armadillo's retail outlet customers. *Id.* ¶ 17.

Shortly after it started distributing the Drum Kits to its retail outlet customers, Armadillo began receiving complaints from those retail outlet customers, who had been forced to accept a high number of product returns due to significant cosmetic and structural defects in the shells of the Drum Kits. *Id.* ¶ 18. As soon as Armadillo began receiving the high volume of complaints from its retail outlet customers, Armadillo immediately inspected the remaining four shipment containers, containing approximately eight hundred Drum Kits and discovered that the Drum Kits

manufactured by Hai Yun were catastrophically defective at an alarming rate. *Id.* ¶ 19. Specifically, a high number of the drum shells had obvious finish defects, and many shells were actually deformed, delaminated and/or cracked. *Id.* The Drum Kits were beyond repair. *Id.* It became clear that the samples Hai Yun had provided were not representative of the Drum Kits that it manufactured and delivered to Armadillo. *Id.*

As a result of Hai Yun's defective manufacture of the Drum Kits, Armadillo was forced to cease distribution of the Drum Kits, as they were unfit for commercial distribution. *Id.* ¶ 20. Moreover, these defective Drum Kits so severely tainted the ddrum® brand's "Diablo" line, that Armadillo was forced to discontinue the "Diablo" line, losing all of the goodwill that Armadillo had developed over the years in the "Diablo" line. *Id.*

## MOTION FOR DEFAULT JUDGMENT

## I.      Standard of Review

A court considering a motion for default judgment must determine whether the factual allegations of the complaint provide a sufficient legal basis supporting such entry. *Nike, Inc. v. Austin*, No. 6:09–cv–796–Orl–28KRS, 2009 WL 3535500, at *1 (M.D. Fla. Oct. 28, 2009) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded.")). The Court must "'examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to' a default judgment." *Id.* (citing *Fid. & Deposit Co. v. Williams*, 699 F.Supp. 897, 899 (N.D. Ga. 1988)).

> In deciding to grant a default judgment after entry of default, "a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether a plaintiff has been substantially prejudiced by the delay involved and how harsh an effect a default judgment might have on the defendant."

*Ivy v. Thorton (In re Thornton),* 419 B.R. 787, 793 (Bankr. W.D. Tenn. 2009) (quoting *La Barbera v. Federal Metal & Glass Corp.,* 666 F. Supp. 2d 341 (E.D.N.Y. 2009)). A plaintiff must also establish that the damages sought are reasonable under the circumstances. *Patray v. Nw. Publ'g, Inc.*, 931 F.Supp 865, 869 (S.D. Ga. 1996). The trial judge has "considerable latitude in determining the amount of the damages" when ruling on a motion for default judgment. *Id.*

## II.    Discussion

In the Motion for Default Judgment, Armadillo does not address the counts individually or by name. Instead, Plaintiff only refers to relief under Fla. Stat. §§ 672.714 and 672.715. These statutes are not mentioned in the Complaint, which cites only to Fla. Stat. § 672.315. The Court can only address the counts presented in the operative pleading and will do so individually.

### A.  Count I: Breach of Contract

The parties agree that Florida law governs this dispute. *See, e.g.*, Doc. 42, p. 4; Doc. 72, p. 6.  In Florida, the elements of a claim for breach of contract are: "(1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003).  Contracts for the sale of goods, including specially-manufactured goods, are governed by Florida's version of the Uniform Commercial Code.  *See* Fla. Stat. § 672.102 (defining the scope of Florida's U.C.C.); Fla. Stat. § 672.105(1) (defining goods to include specially-manufactured products).

In its Complaint, Armadillo alleges that Hai Yun and Armadillo entered a contract, whereby Hai Yun agreed to provide Armadillo with five shipping containers, each containing approximately two hundred Drum Kits that would be suitable for retail sale, as a condition precedent to Armadillo paying for such goods. *Id.* ¶ 22. The Drum Kits that Hai Yun actually provided did not match or meet the quality of the samples that Hai Yun had provided, were not of

average fair quality, as demonstrated by their defective nature and the high volume of complaints and returns by customers, and despite providing it notice thereof, Hai Yun has failed to take any steps to cure the defective goods. *Id.* ¶ 23. Hai Yun's failure to provide Armadillo with Drum Kits meeting the quality of the samples provided constitutes a breach of the agreement to build and deliver Drum Kits that matched the quality of the samples that Hai Yun provided to Armadillo. *Id.* ¶ 24 As a result of Hai Yun' s breach of contract, Armadillo has suffered damages resulting from lost profits, and the loss of goodwill associated with the ddrum® brand and "Diablo" line in excess of $100,000. *Id.* ¶ 25. These allegations, along with those presented above, provide a sufficient basis for the Court to enter default judgment in favor of Armadillo on its claim for breach of contract in Count I.

### B.  Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

In Florida, every contract contains an implied covenant of good faith and fair dealing, which requires the parties to "follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1183-84 (Fla. 2d DCA 2000) (observing that the implied covenant of good faith and fair dealing exists under Florida's U.C.C. pursuant to Fla. Stat. § 671.203). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc.*, 420 F.3d at 1151. Accordingly, "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* at 1152; *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001).

As previously noted, Armadillo has sufficiently alleged a cause of action for breach of contract in Count I.

In its Complaint, Armadillo alleges that the parties entered into an agreement on mutually agreed upon terms that were to be fulfilled by the parties in accordance with the implied duty of good faith and fair dealing. Doc. 1 ¶ 27. Under the Manufacturing Agreement, Hai Yun had express obligations and a duty of good faith and fair dealing in its dealings with Armadillo. *Id.* ¶ 28. Armadillo had reasonable expectations that Hai Yun would fulfill its obligations in light of the Manufacturing Agreement and Hai Yun's past practice and performance. *Id.* ¶ 29. Hai Yun breached its duty of good faith and fair dealing by knowingly failing to discharge its specific contractual obligations, thereby depriving Armadillo of the Manufacturing Agreement's benefits. *Id.* ¶ 30. Hai Yun breached its express and implied obligations under the Manufacturing Agreement. *Id.* ¶ 31. As a result of Hai Yun's breach of its express obligations and implied duty of good faith and fair dealing, Armadillo has suffered foreseeable damages resulting from lost profits and the loss of goodwill associated with the ddrum® brand and "Diablo" line, in excess of $100,000. *Id.* ¶ 32. These allegations, along with those presented above, provide a sufficient basis for the Court to enter default judgment in favor of Armadillo on Count II for breach of the implied covenant of good faith and fair dealing.

### C.  Count III: Breach of Express Warranty

To state a cause of action for breach of an express warranty under Florida's U.C.C., the plaintiff "must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011) (citing *Dunham–Bush, Inc. v. Thermo–Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA

1977)).  An express warranty may arise by words or conduct.  *Miles v. Kavanaugh*, 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977).  Florida's U.C.C. specifies three circumstances under which an express warranty may arise.  Relevant to this case, "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the good shall conform to the sample or model."  Fla. Stat. § 672.313(c).[2]

In the Complaint, Armadillo alleges that Hai Yun expressly warranted that the Drum Kits it delivered to Armadillo pursuant to their contract were of the same quality as the samples it provided Armadillo before Hai Yun began to manufacture the Drum Kits. Doc. 1 ¶ 35. Hai Yun breached its express warranty by providing Armadillo with severely defective Drum Kits, which clearly did not conform to the samples it provided that Armadillo had approved. *Id.* ¶ 36. Armadillo notified Hai Yun that the Drum Kits were non-conforming and were defective. However, Hai Yun failed to take any steps to cure the defective goods. *Id.* ¶ 37. As a result of Hai Yun's breach of its express warranty, Armadillo has suffered damages resulting from lost profits, and the loss of goodwill associated with the ddrum® brand and "Diablo" line, in excess of $100,000. *Id.* ¶ 38. These allegations provide a sufficient basis for the Court to enter default judgment in favor of Armadillo on Count III for breach of express warranty.

### D.  Counts IV and V: Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

Under Florida's U.C.C., there are two distinct implied warranties: an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. *Ryan v. Atl. Fertilizer*

---

[2] Armadillo does not cite any allegations or evidence demonstrating that an express warranty was created pursuant to the other two statutory grounds in Fla. Stat. § 672.313: "an affirmative act or promise made by the seller" or a "description of the goods which is made part of the basis of the bargain."  Fla. Stat. § 672.313(a)-(b).

& *Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987).  The warranty of merchantability is implied in any contract for the sale of goods, "if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1).  In order for goods to be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used," among other requirements.  Fla. Stat. § 672.314(2)(c); *R.A. Jones & Sons, Inc. v. Holman*, 470 So. 2d 60, 64 (Fla. 3d DCA 1985).

By contrast, the implied warranty of fitness for a particular purpose arises only when "a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods."  *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983).  Under those circumstances, an implied warranty arises "that the goods shall be fit for such purpose."  Fla. Stat. § 672.315.

As to both types of implied warranty claims, the buyer must provide notice to the seller of the breach of warranty.  *Dunham–Bush, Inc.,* 351 So. 2d at 353.

In support of Count IV, Armadillo alleges that Hai Yun is a merchant with respect to the sale of musical instruments, including the Drum Kits. Doc. 1 ¶ 41. Hai Yun impliedly warranted that the Drum Kits were merchantable when it entered into the Manufacturing Agreement with Armadillo, and through Hai Yun's prior performance and course of dealing with Armadillo. *Id.* ¶ 42. The Drum Kits were not of average fair quality within their description, and thus were not merchantable. *Id.* ¶ 43. Armadillo notified Hai Yun that the Drum Kits were non-conforming and were defective. However Hai Yun failed to take any steps to cure the defective goods. *Id.* ¶ 44. As a result of Hai Yun's breach of its implied warranty of merchantability, Armadillo has suffered damages resulting from lost profits, and the loss of goodwill associated with the ddrum® brand and "Diablo" line, in excess of $100,000. *Id.* ¶ 45. Based on these allegations, Armadillo has

sufficiently state a claim for breach of the implied warranty of merchantability and is entitled to default judgment on Count IV.

However, with respect to Count V, Armadillo's claim for breach of the implied warranty of fitness for a particular purpose, default judgment must be denied because Armadillo has not alleged that the drum kits were to be used for a "particular purpose."  Florida's U.C.C. distinguishes a "particular purpose" from a use to which the goods are ordinarily put.  *First New England Fin. Corp. v. Woffard*, 421 So. 2d 590, 597 n.10 (Fla. 5th DCA 1982).  A particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business." *Royal Typewriter Co.*, 719 F.2d at 1100.  Accordingly, Armadillo's motion for default judgment is denied as to Count V. Furthermore, because Armadillo's Complaint fails to allege sufficient facts to support a claim for breach of the implied warranty of fitness for a particular purpose, and the time for amending the Complaint has passed, this Count must be dismissed with prejudice.

## III.   Damages

Although a defaulted defendant admits the well-pleaded allegations of liability, the court must determine the amount and character of damages to be awarded. *Miller v. Paradise of Port Richey*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a court determines a default judgment is warranted, it may hold a hearing for purposes of assessing damages. However, a hearing is not required or mandatory if sufficient evidence is submitted to support the claimed damages. *Hubb v. Whitley Trucking, Inc.,* 2008 WL 817002, *2 (M.D. Fla. March 25, 2008).

Under Florida law, where the buyer rightfully revokes acceptance of non-conforming goods, the buyer is entitled to the return of the purchase price that has been paid. *Fryatt v. Lantana One, Ltd.,* 866 So. 2d 158 (Fla. 1st DCA 2004); *Jauregui v. Bobb's Piano Sales & Service, Inc.,* 922 So. 2d 303 (Fla. 3d DCA 2006); Fla. Stat. § 672.711. Florida law also provides for recovery

of general, incidental, and consequential damages. *See* Fla. Stat. §§ 672.714 and 672.715; *Halliburton Co. v. Eastern Cement Corp.*, 672 So. 2d 844 (Fla. 4th DCA 1996).

### A.     Direct Damages

First, Armadillo alleges that, pursuant to Fla. Stat. § 672.714, it is entitled to direct damages in the amount of $41,384.44, which was the amount paid for the seventh container of Drum Kits which contained defective, nonconforming Drum Kits.

> [T]he purchaser of non-conforming goods . . . retains the option to claim either the difference in value or, as plaintiff clearly did in this case, in effect, to cancel the deal and get his money back. . . . This principle is based on the common sense idea that the purchaser is entitled to receive what he wanted to buy and pay for and that the seller is not free to supply any non-conforming item she wishes just so long as the deviant goods are worth just as much.

*Jauregui v. Bobb's Piano Sales & Serv.,* 922 So. 2d 303, 305 (Fla. 3d DCA 2006) (internal citations omitted). *See also* Fla. Stat. § 672.714.

The affidavit of Ross Sacco supports the claim that Armadillo paid $41,384.44 for the seventh container of drum kits, including the cost of delivery from China to Tampa, Florida. Doc. 85-1 ¶ 13. Armadillo has also submitted a copy of the Commercial Invoice illustrating that the amount charged for the drum kits delivered on October 19, 2010 was $41,384.44. Doc. 85-1 at p. 30. Armadillo alleges that the drum kits, as delivered, were worth $0 – therefore making the damages the full price paid for the drum kits. Armadillo indicates that it attempted to get the drum kits repaired but ultimately determined that they could not be salvaged. Doc. 85-1 ¶¶ 20-21. Accordingly, there is sufficient evidence to determine that Armadillo suffered direct damages in the amount of $41,384.44.

### B.     Incidental damages

Florida law also provides that "[i]ncidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of

goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." Fla. Stat. § 672.715(1). Armadillo alleges that it is entitled to the following incidental damages:

- Incoming freight charges for five containers of defective Drum Kits - $20,025.00;

- Import duty for five containers of defective Drum Kits - $11,807.00;

- 14.3% incoming freight and duty charges relating to the return of defective Drum Kits by retail customers - $1,143.00;

- Freight costs and packing materials related to the return of the Drum Kits from the seventh container by retail customers - $4,763.00;

- Off-site storage and trucking for defective Drum Kits - $16,606.00;

- Labor costs related to inspections and moving the product - $9,600.00; and

- Disposal costs - $2,100.00.

"[A] buyer's expenses incurred before discovering a defect are recoverable as incidental damages." *Paul Gottlieb & Co. v. Alps S. Corp.,* 985 So. 2d 1, 9 (Fla. 2d DCA 2007) (citing *Adam Metal Supply, Inc. v. Electrodex, Inc.,* 386 So. 2d 1316 (Fla. 2d DCA 1980)). Sacco testified that the 7th, 8th, 9th, 10th and 11th shipment were all defective. Doc. 85-1 ¶¶ 13-15. However, none of these defects could have been discovered prior to receipt of the shipments. The incoming freight charges for five containers of defective Drum Kits, in the amount of $20,025.00, are supported by invoices from Concert Group Logistics. *See* Doc. 85-2 at pp. 7-20. Armadillo has also provided invoices to support the import duty for the five containers of defective drum kits, in the amount of $11,807. *See* Doc. 85-2 at pp. 21-25. Thus, the incoming freight and duty charges for the containers of defective drum kits, totaling $31,832, are recoverable.

13

The remaining costs fall within the statutory definition of incidental damages, as "inspection . . . care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." However, Armadillo has not provided documentation to support all of these alleged costs. Therefore, only off-site storage costs of $16,046 (*see* Docs. 85-2 at pp. 29-38 and 85-3 at pp. 1-29), and disposal costs of $320.22 (Doc. 83-5 at p. 30) can be awarded as damages. Thus, the total amount of recoverable incidental damages is $48,198.22.

### C.    Consequential damages

Finally, Florida law provides for consequential damages, including: "(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) Injury to person or property proximately resulting from any breach of warranty." Fla. Stat. § 672.715(2). In *Nyquist v. Randall,* 819 F.2d 1014 (11th Cir. 1987) the Eleventh Circuit interpreted § 672.715(2) to mean that

> (1) "consequential damages" are those damages "resulting from general or particular needs" of the purchaser, (2) such damages are not recoverable unless "the seller at the time of contracting had reason to know" of the possibility that they would occur, and (3) such damages are not recoverable unless they "could not reasonably be prevented by cover or otherwise."

*Id.* at 1018.

Armadillo seeks the following amounts for consequential damages:

- Domestic return of Drum Kits from the seventh container - $7,700.00;

- International return of Drum Kits from the seventh container - $6,512.00; and

- Lost profits associated with eight, ninth, tenth, and eleventh containers - $217,240.70.

14

Armadillo provides no documentation for the "domestic return of drum kits from the seventh container." With regard to the "International return of Drum Kits from the seventh container", Sacco's affidavit describes this as the cost refunded to an international distributor for purchase of the defective drum kits. Doc. 85-1 ¶ 32. Armadillo has provided copies of invoices showing the credits given to the international distributors for the defective drums. *See* Doc. 85-2 at pp. 26-28. However, there is no documentation illustrating the purchase of the defective drums by that particular distributor or complaints from that distributor regarding defective drum kits. Accordingly, there is insufficient evidence to award damages for these costs.

The final element of consequential damages requested by Armadillo is its lost profits in the amount of $217,240.70. Under Florida law, lost profits "must be proven with a reasonable degree of certainty before [the loss] is recoverable." *Shadow Lakes, Inc. v. Cudlipp Constr. & Dev. Co.*, 658 So. 2d 116, 117 (Fla. 2d DCA 1995). "The mind of a prudent impartial person should be satisfied that the damages are not the result of speculation or conjecture." *Id.* Lost profits "can be recovered if (1) the breaching party caused the loss; and (2) the amount of such damages can be adequately determined by some standard." *HGI Assocs. v. Wetmore Printing Co.*, 427 F.3d 867, 879 (11th Cir. Fla. 2005). In awarding such damages, "the district court must consider whether (1) the seller's breach naturally caused (2) the buyer to suffer damages arising from the buyer's general or particular needs that (3) the seller had reason to know of at the time of contracting, and (4) those damages can be proven to a reasonable certainty, but (5) the buyer could not have prevented them by cover or otherwise." *Id.*

Sacco's affidavit indicates that the $217,240.70 in alleged lost profits, "represents the difference between the price point at which Armadillo sold the 'Diablo' Drum Kits and the price that Armadillo paid Hai Yun for the defective, non-conforming Drum Kits that were contained in

15

the eighth, ninth, tenth, and eleventh containers furnished by Hai Yun." Doc. 85-1 ¶ 27. However, this statement is the only evidence supporting the lost profits claim. Under Florida law, this is entirely insufficient to support an award for lost profits. Accordingly, if Armadillo wishes to purse a claim for lost profits it must do so at trial.

## IV.    Conclusion

For the reasons discussed above, Armadillo is entitled to default judgment in its favor for the amount of $89,582.66, representing $41,384.44 in direct damages and $48,198.22 in incidental damages.  Plaintiff's claim for lost profits will be scheduled for trial.

### MOTION FOR INVOLUNTARY DISMISSAL OF HAI YUN'S COUNTERCLAIMS

## I.    Background

In its Amended Answer (Doc. 38), Hai Yun included counterclaims for breach of contract (Count I) and Domestication of Out-of-Country Foreign Money Judgment (Count II).  Armadillo seeks involuntary dismissal of both counts as a sanction for Hai Yun's failure to appear in this case since its counsel withdrew, failure to participate in preparation of the Joint Pretrial Statement, and failure to appear at the Final Pretrial Conference, as required by this Court's Case Management and Scheduling Order (Doc. 28) ("CMSO").

## II.    Applicable Law

Armadillo cites numerous legal bases for imposing the sanction of involuntary dismissal of counterclaims on Hai Yun. First, Armadillo cites Rule 41(b) which provides, in pertinent part that involuntary dismissal may be granted "[f]or failure of the plaintiff to prosecute or comply with these rules or any order of court . . . ."

Armadillo also cites to the language of this Court's CMSO, which provides:

> **SANCTIONS** – The Court will impose sanctions on any party
> or attorney: 1) who fails to attend and to participate actively

16

> in the meeting to prepare the Joint Pretrial Statement, or who refuses to sign and file the agreed document; 2) who fails to attend the Final Pretrial Conference, or who is substantially unprepared to participate; 3) who fails to attend the mediation and actively participate in good faith, or who attends the mediation without full authority to negotiate a settlement, or who is substantially unprepared to participate in the mediation; or 4) who otherwise fails to comply with this order. Sanctions may include but are not limited to an award of reasonable attorneys' fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt.

Doc. 28 at p. 13.

Rule 16(f) also provides for the imposition of sanctions when a party "(a) Fails to appear at a scheduling or other pretrial conference; (b) Is substantially unprepared to participate - or does not participate in good faith - in the conference; or (c) Fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). The sanctions permitted under Rule 16(f)(1) are those authorized by Rule 37(b)(2)(A)(ii)-(vii), which includes "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

> In addition, the district court possesses the inherent power to police its docket. Incident to this power, the judge may impose formal sanctions upon dilatory litigants. The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice.

*Royal Palace Hotel Assocs. v. Int'l Resort Classics*, 178 F.R.D. 588, 591-592 (M.D. Fla. 1997) (internal citations omitted).

## III. Analysis

In the instant case, Hai Yun has: (1) failed to retain substitute counsel, despite this Court's three warnings; (2) failed to participate in the preparation of the Joint Pretrial Statement; and (3) failed to appear at the Pretrial Conference. It is clear that Hai Yun does not have any intention of participating in this proceeding.

Under any rule, dismissal is warranted only on a clear record of delay or willful contempt. *Royal Palace Hotel Assocs.,* 178 F.R.D. at 592 (citing *Mingo*, 864 F.2d at 102; *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). Courts are hesitant to impose harsh sanctions on parties for the misconduct of their attorneys. *Id.* However, in this case, it is Hai Yun's misconduct, not its attorney's misconduct, at issue here.

On September 3 and 10, 2014, the magistrate judge entered an Order granting Hai Yun's attorneys' motions to withdraw and specifically instructed Defendant to retain substitute counsel within 30 days and noted that failure to do so could result in entry of default or other sanctions. Doc. 64 at p. 2; Doc. 66 at p. 2. When Hai Yun did not comply with those orders, the magistrate judge entered an Order to Show Cause on December 3, 2014 instructing Hai Yun "to show cause in writing why sanctions should not be imposed, including default, for its failure to comply with the Court's orders." Doc. 71 at p. 1. Hai Yun was warned that failure to respond to the show cause order could result in additional sanctions. *Id.* at pp. 1-2. Hai Yun failed to respond to that Order and, as a result, default was entered against Hai Yun on June 23, 2015. Docs. 78-79.

Hai Yun's unwillingness to participate in this litigation was further demonstrated by its failure to respond to Armadillo's summary judgment motion. Armadillo filed its Motion for Summary Judgment (Doc. 72) on December 5, 2014. Pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules, Hai Yun's response was due on December 22, 2014. On December 23, 2014, when Hai Yun filed no response, the Court directed it to file a response to the summary judgment motion on or before January 6, 2015. *See* Doc. 74. No response was ever filed. The Court then entered a notice setting the pretrial conference for June 23, 2015. Hai Yun did not appear at the conference or participate in preparation of the joint pretrial statement.

Finally, Armadillo has filed two motions seeking sanctions against Hai Yun (Docs. 76 and 84) and a motion for default judgment (Doc. 85). Hai Yun has not responded to these motions either, further indicating Hai Yun's unwillingness to participate in this litigation.

Here, Hai Yun's conduct in failing to obey court orders is clearly willful and has resulted in significant delay of this proceeding. The Court gave Hai Yun multiple opportunities to cure its deficiencies, and to show cause as to why sanctions should not be imposed and it has failed to do so. Furthermore, the fact that the entry of default against Hai Yun has not inspired its cooperation in this suit suggests that lesser sanctions are insufficient to gain Hai Yun's compliance with this Court's rules and orders.

Several federal courts have held that dismissal of an action with prejudice is an appropriate sanction for conduct similar to that exhibited by the Defendant in this case. *See, e.g., Royal Palace Hotel Assoc.,* 178 F.R.D. 588 (holding that sanctions, including striking plaintiff's pleadings, entering judgment for defendant and dismissing plaintiff's counterclaim were proper under the Federal Rules of Civil Procedure and Local Rules where plaintiff failed to file its final pretrial statement by specified date as required by court scheduling order, failed to file a motion requesting an extension of time to prepare and file final pretrial statement and where counsel failed to appear at the final pretrial conference); *Mingo v. Sugar Cane Growers Cooperative of Fla.,* No. 83–8640–CIV–PAINE, 1989 WL 205633 (S.D. Fla. May 26, 1989) (case dismissed with prejudice for failure to comply with pretrial order deadlines); *Banks v. O'Bannon*, 124 F.3d 203 (7th Cir. 1997) (case dismissed with prejudice for failure to submit pretrial material before court-imposed deadline); *Jackson v. City of New York,* 22 F.3d 71, 74-75 (2d Cir. 1994) (case dismissed for failure to submit joint pre-trial order); *Alvarez v. Simmons Mkt. Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir. 1988) (case dismissed for failure to submit proposed pretrial order).

The CMSO in *Royal Palace*, like the one here, explicitly warned that sanctions could be imposed for failure to participate in the drafting of a joint pretrial statement or appear at the pretrial conference. *See Royal Palace,* 178 F.R.D. at 590. Just like the defendant in *Royal Palace*, Hai Yun "failed to contribute in good faith to the preparation of the final pretrial statement ordered by the Court"; "failed to file its final pretrial statement"; "neglected even to file a motion requesting an extension of time to prepare and file the final pretrial statement"; and "failed to appear at the final pretrial conference." *Id.* at 592-593. Thus, this Court finds, as did the court in *Royal Palace* that no other sanction short of dismissing Hai Yun's counter-claim will serve justice and cure the harm caused to Armadillo. *See id.* at 593 (citing *Mingo*, 864 F.2d at 102; *Goforth,* 766 F.2d at 1535). The Court is aware of the severity of such sanction.

Specifically, the Court finds that Hai Yun's failure to participate in preparation of the final pretrial statement prevented the parties from complying with the requirements of Fed. R. Civ. P. 16, Local Rule 3.06, and the Court's scheduling order. Hai Yun knew of its duty to participate since January 13, 2014. *See* Doc. 28. However, Hai Yun did virtually nothing to comply with the CMSO.

Hai Yun's failure to make a good faith effort to participate prevented Armadillo from preparing a pretrial statement setting forth the parties agreement on (1) the basis of federal jurisdiction; (2) a concise statement of the nature of the action; (3) a brief, general statement of each party's case; (4) a list of all exhibits and Rule 5.04 exhibit substitutes to be offered at trial with notation of all objections thereto, (5) a list of all witnesses who may be called at trial; (6) a list of all expert witnesses including, as to each such witness, a statement of the subject matter and a summary of the substance of his or her testimony pursuant to Fed. R. Civ. P. Rule 26(e)(1) and (3); (7) a statement of the elements of each claim of money damages and the amount being sought

20

with respect to each such element; (8) a list of all depositions to be offered in evidence at trial, including a designation of the pages and lines to be offered from each deposition; (9) a concise statement of those facts which are admitted and will require no proof at trial, together with any reservations directed to such admissions; (10) a concise statement of applicable principles of law on which there is agreement; (11) a concise statement of those issues of fact which remain to be litigated (without incorporation by reference to prior pleadings and memoranda); (12) a concise statement of those issues of law which remain for determination by the Court (without incorporation by reference to prior pleadings or memoranda); (13) a concise statement of any disagreement as to the application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure; (14) a list of all motions or other matters which require action by the Court; and (15) the signatures of counsel for all parties. *See* Local Rule 3.06(c).

In addition, Hai Yun's failures prevented the parties from making a good faith effort to (1) discuss the possibility of settlement; (2) stipulate to as many facts or issues as possible; (3) examine all exhibits and Rule 5.04 exhibit substitutes or documents and other items of tangible evidence to be offered by any party at trial; or (4) exchange the names and addresses of all witnesses. *See* Local Rule 3.06(b). Hai Yun prevented this Court from conducting a productive final pretrial conference and wasted the Court's limited time and resources.

The actions and inactions of Hai Yun significantly prejudiced Armadillo. To force Armadillo to proceed to trial without the benefit of an adequate pretrial meeting between lead trial counsel fulfilling the requirements of Local Rule 3.06, without the establishment of a final pretrial statement, and without the benefit of an effective final pretrial conference before the Court to narrow the contested issues, would prejudice Armadillo's ability to effectively defend against the counterclaims brought by Hai Yun. *See* Fed. R. Civ. P. 16(e); Local Rule 3.06(e).

This Court is aware that the sanction of dismissal imposes a severe penalty on a party. This is not a situation, however, where dismissal will punish an innocent client for the misconduct of its attorney. Hai Yun's non-compliance is its own, given that it refused to retain counsel despite numerous orders to do so. The Court further finds that Hai Yun's noncompliance is not substantially justified and that no less severe sanction will be sufficient. For the aforementioned reasons, Hai Yun's counterclaims are due to be involuntarily dismissed without prejudice.

<u>CONCLUSION</u>

Accordingly, it is **ORDERED** and **ADJUDGED** that

1.      Plaintiff's Motion for Default Judgment (Doc. 85) is **GRANTED in part and DENIED in part**. At the conclusion of this action, judgment will be entered in favor of Armadillo and against Hai Yun on Counts I through IV in the amount of $89,582.66.

2.      Count V of the Plaintiff's Complaint is hereby **DISMISSED** with prejudice.

3.      Plaintiff's Motion to Dismiss Counterclaims (Doc. 84) is **GRANTED**. Hai Yun's Counterclaims are hereby **DISMISSED** without prejudice.

4.      A trial on Plaintiff's claim for lost profits will be set by separate Order.

**DONE AND ORDERED** in Tampa, Florida on November 5, 2015.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties